UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
:
BRADLEY ALLEN,                                               :
:
                Plaintiff,                         :
:
  -against-                                               :
:
THE CITY OF NEW YORK; Mayor BILL DE          :     **FIRST AMENDED COMPLAINT**
BLASIO; NYPD Commissioner DERMOT SHEA;    :
Former NYPD Chief of Department TERENCE    :     Index No. 21-cv-6473 (MKB) (SJB)
MONAHAN; NYPD Police Officer BRIAN            :
RICKLI; NYPD Lieutenant CATHERINE            :     **Jury Trial Demanded**
KUNST; and JOHN/JANE DOES Nos. 1-10,         :
:
                Defendants.                     :
:
-------------------------------------------------------------x

       Plaintiff BRADLEY ALLEN, by and through his attorney, Robert T. Perry, alleges upon

knowledge, information and/or belief as follows:

<u>**PRELIMINARY STATEMENT**</u>

       1.     Bradley Allen brings this action under 42 U.S.C. § 1983, the First, Fourth and

Fourteenth Amendments to the United States Constitution, and New York law against: the City

of New York ("the City"); former Mayor Bill de Blasio; former Commissioner of the Police

Department of the City of New York ("NYPD") Dermot Shea; former NYPD Chief of

Department Terence Monahan; NYPD Police Officer Brian Rickli; NYPD Lieutenant Catherine

Kunst; and other NYPD police officers whose identities are presently unknown to Mr. Allen.

       2.     On Friday evening, May 29, 2020, Mr. Allen and his wife participated in a protest

outside the Barclays Center in Brooklyn against systemic racism in law enforcement in the

United States and the killings of unarmed African Americans by police officers.  The protest was

one of many that took place across the United States following the murder of George Floyd, an

unarmed African American, by Minneapolis police officers on May 25, 2020 ("the Floyd

protests").

3.　　　Even though Mr. Allen and his wife peacefully protested and committed no crime

or offense, NYPD police officers assaulted Mr. Allen, arrested him, placed Mr. Allen in

excessively tight handcuffs for an extended period, and held him in custody much longer than

necessary to process his arrest and under dangerous and unsafe conditions that exposed Mr.

Allen to the COVID-19 virus, before finally releasing Mr. Allen and issuing him two summonses

charging Mr. Allen with disorderly conduct.

4.　　　On information and belief, no accusatory instrument was ever filed against Mr.

Allen and no criminal court or summons court proceeding was ever brought against him, thus

denying Mr. Allen an opportunity to defend himself against the bogus charges.

5.　　　In response to the Floyd protests in New York City in May and June 2020, the

NYPD deployed many police officers who lacked adequate training in policing protests in a

manner consistent with the constitutional rights of peaceful protesters.  The City's failure,

through the NYPD, to deploy adequately trained police officers on May 29, 2020 led and/or

contributed to the injuries that Mr. Allen suffered on that date and continues to suffer, and

evidenced deliberate indifference to Mr. Allen's constitutional rights.

6.　　　Mr. Allen seeks a declaratory judgment that the City's customs, practices and/or

policies in effect on May 29, 2020 for policing protests violated Mr. Allen's right to freedom of

speech under the First Amendment to the United States Constitution, right to be from

unreasonable seizure under the Fourth Amendment to the United States Constitution and right to

due process of law under the Fourteenth Amendment to the United States Constitution.  Mr.

Allen also seeks compensatory and punitive damages to the extent permitted by law.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over Mr. Allen's federal law claims brought pursuant

to 42 U.S.C. § 1983 under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

8.      This Court has jurisdiction over Mr. Allen's supplemental state law claims under

28 U.S.C. § 1367(a).

9.      Mr. Allen's claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and

2202, 42 U.S.C. § 1983, Rule 57 of the Federal Rules of Civil Procedure and the Court's inherent

equitable authority.

10.     Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b)(2)

because a substantial part of the events giving rise to Mr. Allen's claims occurred in this district.

## JURY DEMAND

11.     Mr. Allen demands a trial by jury on each and every claim for which a jury trial is

available under Fed. R. Civ. P. 38(b).

## PARTIES

12.     Plaintiff BRADLEY ALLEN is a resident of Kings County in the City and State

of New York.

13.     Defendant THE CITY OF NEW YORK (the "City") is, and was at all relevant

times, a municipal corporation duly organized and existing under the laws of the State of New

York.  The City operates the Police Department of the City of New York ("NYPD"), which acts

as the City's law enforcement agent and for which the City is ultimately responsible.  The City

assumes the risks incidental to the maintenance of a police force and the employment of police

officers, as said risks attach to the public consumers of the services provided by the NYPD.

14.     Defendant BILL DE BLASIO was at all relevant times the Mayor of the City. Defendant de Blasio was the City's chief executive officer.  As the City's chief executive officer, defendant de Blasio was the principal policymaker for City agencies including the NYPD. Defendant de Blasio is being sued in his individual and official capacities.

15.     Defendant DERMOT SHEA was at all relevant times Commissioner of the NYPD.  As NYPD Commissioner, defendant Shea had final policymaking authority for the NYPD and was responsible for the hiring, training, supervision and discipline of NYPD police officers.  Defendant Shea is being sued in his individual and official capacities.

16.     Defendant TERENCE MONAHAN was at all relevant times the Chief of Department of the NYPD.  As NYPD Chief of Department, defendant Monahan had primary responsibility for NYPD operations, including deployment of officers to police the Floyd protests.  Defendant Monahan is being sued in his individual capacity.

17.     Defendant BRIAN RICKLI (Shield No. 40732) is and was at all relevant times a duly appointed agent, employee, officer, and servant of the NYPD.  Defendant Rickli is being sued in his individual and official capacities.

18.     Defendant CATHERINE KUNST is and was at all relevant times a times a duly appointed agent, employee, officer, and servant of the NYPD.  Defendant Kunst is being sued in her individual and official capacities.

19.     All "John Doe" and "Jane Doe" defendants are and were at all relevant times duly appointed agents, employees, officers and servants of the NYPD.  The Doe defendants are being sued in their individual and official capacities.

20.     At all relevant times, the defendant police officers were acting under color of state law in the course and scope of their duties and functions as agents, employees, officers and

servants of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions and duties.  At all relevant times, the defendant police officers were acting for and on behalf of the NYPD, with the power and authority vested in them as agents, employees, officers and servants of the NYPD.

21.     At all relevant times, the defendant police officers acted jointly and in concert with each other.  Each defendant police officer had the duty and the opportunity to protect Mr. Allen from the unlawful actions of the other defendant police officers but each defendant police officer failed and refused to perform such duty, thereby proximately causing Mr. Allen's injuries.

## STATEMENT OF FACTS

### The Floyd Protests and the NYPD's Response

22.     After the murder of George Floyd, an unarmed African American, by Minneapolis police officers, on May 25, 2020, millions of people across the United States engaged in protests against systemic racism in law enforcement in the United States and the killings of unarmed African Americans by police officers (the "Floyd protests").

23.     The NYPD responded to the Floyd protests in New York City by, among other things, using excessive force on peaceful protesters, arresting them on bogus charges, placing them in excessively tight handcuffs for extended periods of time, and holding them in custody much longer than necessary to process their arrests and under circumstances that disregarded the risk posed by the COVID-19 virus.

### Mr. Allen Attends a Floyd Protest Near the Barclays Center on May 29, 2020

24.     On Friday evening, May 29, 2020, Mr. Allen and his wife attended a Floyd protest near the Barclays Center in Brooklyn.

25.     On information and belief, the protest was held after consultation with and authorization from the NYPD, as a large number of police officers were present and Flatbush Avenue was closed to vehicular traffic near the Barclays Center during the protest.

26.     To protect themselves from the COVID-19 virus, both Mr. Allen and his wife wore masks.

27.     Mr. Allen and his wife peacefully protested that evening, lawfully exercising their free speech rights.

28.     At about 8:00 p.m., Mr. Allen and his wife stood where the plaza meets the sidewalk in front of the entrance to the Barclays Center, chanting "Black Lives Matter" with other protesters.

29.     As of May 29, 2020, the City had not yet imposed a curfew closing public spaces after a certain hour.

30.     A large group of police officers were assembled behind portable metal barricades beneath the awning above the entrance to the Barclays Center.

31.     Police officers suddenly moved out from behind the metal barricades and began assaulting peaceful protesters, striking them with batons, tackling them to the ground, and placing them in handcuffs.

32.     Protesters, including Mr. Allen and his wife, were not given any prior warning, let alone an order to disperse; nor was there any reason for them to disperse, since they were protesting peacefully.

33.     Seeing police officers assaulting peaceful protesters, Mr. Allen and his wife moved to the other side of Flatbush Avenue, where it intersects with Pacific Street.

34.     Standing on the sidewalk on the southeast corner of Flatbush Avenue and Pacific Street, Mr. Allen and his wife continued to protest peacefully.

35.     Mr. Allen and his wife, and nearly every other protester in the vicinity, complied with police officer commands to "move back" onto the sidewalk.

36.     No police officer ordered the protesters standing on the sidewalk on the southeast corner of Flatbush Avenue and Pacific Street, including Mr. Allen and his wife, to disperse from the location.

37.     While Mr. Allen and his wife peaceful protested with others on the sidewalk on the southeast corner of Flatbush Avenue and Pacific Street, a John Doe defendant standing nearby instructed other police officers as follows on what crimes and offenses to charge the protesters with:

> You all see what they're doing right now.  None of this I don't know what the fuck happened.  What are they doing right now?  Unlawful assembly, failure to disperse, they're in the streets.  You have your eyes, make your own observation. You understand.  Anybody have a question about that?

There were no questions, as the police officers present understood from the instruction that they were to arrest protesters for unlawful assembly, failure to disperse and being in the street.

38.     There was no unlawful assembly; there was no order to disperse; and with the exception of a single person who disobeyed police commands to "move back," the protesters at the southeast corner of Flatbush Avenue and Pacific Street, including Mr. Allen and his wife, all stood on the sidewalk, not in the street.

39.     A line of police officers suddenly pulled out their batons and charged the protesters standing on the sidewalk on the southeast corner of Flatbush Avenue and Pacific Street, including Mr. Allen and his wife.

7

40.     As Mr. Allen turned to move in the opposite direction from the charging officers, a John/Jane Doe defendant struck Mr. Allen hard from behind with a baton on his right arm.

41.     Less than 30 seconds later, one or more John/Jane Doe defendants tackled Mr. Allen from behind.

42.     Mr. Allen fell face first to the ground, with a John/Jane Doe defendant's arms wrapped around Mr. Allen.

43.     Mr. Allen landed on his left elbow on the sidewalk; the elbow split open and started to bleed.

44.     A John/Jane Doe defendant stayed on Mr. Allen's back for 10-to-15 seconds.

45.     Mr. Allen did nothing to provoke the police assault other than lawfully exercise his free speech right to engage in peaceful protest.

46.     Hoping to get the officer or officers off him more quickly, Mr. Allen placed his hands behind his back while he was laying face down on the ground.

47.     Assisted by defendant Kunst, a John/Jane Doe defendant placed excessively tight handcuffs on Mr. Allen's wrists, causing Mr. Allen to immediately feel substantial pain in his right wrist.

48.     Mr. Allen turned over onto his back, sat up, and asked the first officer he saw -- on information and belief, defendant Rickli -- to loosen the handcuffs because they were hurting.

49.     Despite Mr. Allen's plea to loosen the excessively tight handcuffs, defendant Rickli did not loosen Mr. Allen's handcuffs for another half hour or so.

50.     Defendant Rickli eventually picked Mr. Allen up and walked him to a police van (a short bus), where defendant Rickli finally removed the excessively tight handcuffs and placed looser handcuffs on Mr. Allen's wrists.

51.     While waiting to board the police van with Mr. Allen, defendant Rickli asked another police officer -- a Jane Doe defendant -- what to charge Mr. Allen with, and she replied disorderly conduct, even though Mr. Allen had not committed any crime or offense, not even disorderly conduct.

52.     As he waited to board the police van, Mr. Allen overheard two police officers joking, in sum and substance, that they would have to transport the arrestees to One Police Plaza because they had forgotten to bring their summons books to the scene.

53.     Mr. Allen and defendant Rickli eventually boarded the police van with other officers and arrestees.

54.     While most arrestees on the police van, including Mr. Allen, were wearing masks, many of the officers other than defendant Rickli were not wearing masks.

55.     There was no social distancing on the police van, as police officers and arrestees sat in close proximity.

56.     Mr. Allen was transported to One Police Plaza, where he and defendant Rickli waited outside in a line with other arrestees and arresting officers for 30 to 45 minutes.

57.     Following his arrest processing, Mr. Allen was placed in a holding cell with 20 to 40 other arrestees.

58.     Although most arrestees had masks, there was no social distancing in the holding cell, which was about 15 feet by 25 feet.

59.     Mr. Allen's handcuffs were not removed until he was placed in the holding cell.

60.     At about 2:00 a.m. on May 30, 2020, Mr. Allen was released, after approximately five and one-half hours in custody.

61.     At the time of Mr. Allen's release from police custody, Officer Rickli issued Mr. Allen two summonses, each charging him with disorderly conduct.

62.     The charges were bogus.  There was no probable cause to believe that Mr. Allen had committed any crime or offense during the Floyd protest near the Barclays Center on Friday evening, May 29, 2020, not even disorderly conduct.

63.     On information and belief, Mr. Allen was targeted for law enforcement action because he, along with other protesters, spoke out against systemic racism in law enforcement in the United States and the killings of unarmed African Americans by police officers, including in New York City.

64.     On information and belief, no accusatory instrument was ever filed against Mr. Allen and no criminal court or summons court proceeding was ever brought against him in connection with the Floyd protest near the Barclays Center on Friday evening, May 29, 2020.

65.     As a result of police actions during the Floyd protest near the Barclays Center on Friday evening, May 29, 2020, Mr. Allen suffered a loss of liberty.

66.     As a result of police actions during the Floyd protest near the Barclays Center on Friday evening, May 29, 2020, Mr. Allen suffered injuries to his right wrist, right forearm and left elbow.

67.     As a result of police actions during the Floyd protest neat the Barclays Center on May 29, 2020, Mr. Allen suffered and continues to suffer emotional distress, mental anguish, shock, fright, apprehension, embarrassment and humiliation.

**The City's Customs, Practices and Policies Relating to Policing of Protests**

68.     Time and again, for more than two decades, NYPD police officers have regularly violated the civil rights of peaceful protesters in a myriad of ways, including by:

(a)      arresting peaceful protesters without probable cause to believe they have committed any crime or offense;

(b)      using excessive force on peaceful protesters, including through misuse of batons;

(c)      holding arrested protesters in custody -- often under dangerous and unsafe conditions -- well beyond the time needed to process their arrests; and

(d)      placing arrested protesters in excessively tight handcuffs for extended periods of time.

69.      Thus, for example, during the February 15, 2003 demonstration against the Iraq War, NYPD officers undertook "dangerously disproportionate and unnecessary action," according to the New York Civil Liberties Union ("NYCLU").  NYCLU, *Arresting Protest* (2003) at 11, *available at* https://www.nyclu.org/sites/default/files/nyclu_arresting_protest.pdf.

70.      NYCLU documented repeated instances of NYPD police officers misusing their batons on peaceful protesters.  *See, e.g., Arresting Protest* at 11 ("[B]aton wielding riot police . . . knocked protesters down in an attempt to push them onto the sidewalk."); *id.* at 13 ("The officers continued to wield their batons as the horses came down the street from Second Avenue."); *id.* at 14 ("Batons were also used against the crowd.  A 63-year-old Manhattan woman reported that a police officer 'turned his nightstick around, pointed it directly at me, and jammed me so hard in the gut that I went crashing to the sidewalk.'").

71.      NYCLU also reported a pattern of NYPD police officers arresting protesters without probable cause to believe they had committed any crime or offense.  *See, e.g., Arresting Protest* at 13 ("even though [protesters] had permission to be there, many were arrested.").

72.      NYCLU further found that "nearly all [arrestees] were held much longer than necessary" to process their arrests and under dangerous and unsafe conditions.  *Arresting Protest*

at 21; *see also id.* ("After one group began demanding to use the bathroom, the police chained

them together and forced them to stand in the courtyard outside in the cold.").

73.     NYCLU also documented that protesters were placed in excessively tight

handcuffs for extended periods.  *See, e.g., Arresting Protest* at 21 ("Fifteen detainees reported

problems arising from being handcuffed for the extended period prior to processing.  Many

complained that their plastic handcuffs were on so tightly that they cut off circulation and

eventually broke through the skin.  One officer admitted that the cuffs were not meant to be used

for such a long duration, but refused to remove them nonetheless.").

74.     Similarly, during the Republican National Convention in the summer of 2004,

NYPD police officers arrested many peaceful protesters without probable cause to believe they

had committed any crime or offense.  *See, e.g.,* NYCLU, *Rights and Wrongs at the RNC* (2005)

at 7 (227 people arrested at the August 31 World Trade Center sidewalk march; the Manhattan

District Attorney dismissed all cases after viewing a videotape depicting the entire sequence of

events surrounding these arrests); *id.* at 12 ("In each instance of mass arrests, large numbers of

people were peacefully assembled on public streets or sidewalks, and the police failed to provide

any meaningful order or opportunity for people to disperse before arresting them."), *available at*

https://www.nyclu.org/sites/default/files/publications/nyclu_pub_rights_wrongs_rnc.pdf.

75.     NYCLU found that most of the arrestees were held in custody much longer than

necessary to process their arrests and under dangerous and unsafe conditions.  *See. e.g., Rights*

*and Wrongs at the RNC*, at 14 ("[T]he NYCLU received reports from 169 people about how long

they were held after being arrested.  Two-thirds of them reported having been detained for more

than 24 hours and nearly 40% of them reported being held for 36 hours or more."); *id.* at 15 ("By

all accounts, there was inadequate seating in the holding cells at Pier 57, which forced people to

sit or lie on the bare concrete floors covered with soot and grease.  Though hundreds of people were held at Pier 57 for extended periods of time and in many instances overnight, they had no access to running water or blankets.  The only bathroom facilities were portable toilets, which quickly became disgusting; many detainees reported people relieving themselves in the open out of desperation.").

76.  NYCLU also reported that a "videotape show[ed] police officers striking protesters with batons in a chaotic scene prompted by officers suddenly pulling a line of barricades across Eighth Avenue near Madison Square Garden."  *Rights and Wrongs at the RNC*, at 20.

77.  NYCLU further reported receiving 50 complaints of arrestees being held in excessively tight handcuffs, two arrestees for up to eight hours, and officer refusals to loosen the handcuffs.  *Rights and Wrongs at the RNC*, at 34.

78.  NYPD police officers employed much the same flawed approach in response to the Floyd protests in New York City.  As the New York City Department of Investigation ("NYC DOI") noted in its report on the NYPD's response to the Floyd protests, "[the] NYPD's primary strategy in at least the early days of the Floyd protests appears to have involved defaulting to an application of 'disorder control' tactics and methods, without adjustment to reflect the NYPD's primary responsibility for facilitating lawful First Amendment expression.  These deployment strategies, tactics, and shows of force exacerbated confrontations between police and protesters, rather than de-escalating tensions."  NYC DOI, *Investigation into NYPD Response to the George Floyd Protests* (Dec. 2020) at 3, *available at* https://www1.nyc.gov/assets/doi/reports/pdf/2020/DOIRpt.NYPD%20GeorgeFloyd%20Protests. 12.18.2020.pdf.

79.     The NYC DOI further observed that "by adopting a broad disorder control approach focused on force, control, and arrests, the NYPD gave insufficient attention to the need to balance the important objective of preventing additional violence and damage with the imperative of protecting citizens' rights to engage in lawful protest.  This approach inevitably led to instances where NYPD officers acted indiscriminately as between lawful, peaceful protesters and unlawful actors, thereby exercising force beyond what was necessary under the circumstances." *Id.* at 40.

80.     According to the NYC DOI, the New York City Civilian Complaint Review Board received 1,646 protest-related allegations against NYPD police officers associated with 248 incidents occurring between May 28 and June 20, 2020, with force allegations comprising the largest number of allegations.  *Id.* at 28.

81.     The NYC DOI concluded that: "[w]hile assessments of whether individual officers used excessive force or unjustified force in specific incidents await the conclusion of disciplinary investigations, there can be no question that NYPD officers employed force against protesters on numerous occasions that observers on the scene (whether [members of the Mayor's Community Affairs Unit], members of the media, or others) perceived to be unjustified by the circumstances." *Id.* at 43.

82.     According to the NYC DOI, the Mayor's Community Affairs Unit confirmed through its field staff that NYPD police officers used excessive force, including punching, kicking, tackling, or using batons to strike protesters.  *Id.* at 42.

83.     The NYC DOI also noted that the NYPD took a significant number of protesters into custody at the same time through mass arrests, placed them in excessively tight handcuffs

14

for long periods, and held the arrested protesters under dangerous and unsafe conditions that exposed them to the COVID-19 virus.  *Id.* at 42, 45.

84.     Defendants de Blasio, Shea and Monahan were personally involved in the above customs, policies, and practices employed by the NYPD during the Floyd protests in New York City, including the protest near the Barclays Center on Friday evening, May 29, 2020.  *See Transcript of NYPD Commissioner Dermot Shea*, N.Y.C. Dep't of Investigations (May 10, 2021) at 7, 12-14, 16, *available at*

https://www1.nyc.gov/assets/doi/oignypd/response/Commissioner_DermotShea.pdf.

85.     Given the NYPD's past mishandling of large protests, defendants de Blasio, Shea and Monahan and other NYPD policymakers were plainly on notice prior to the Floyd protests in New York City that adequate training of NYPD police officers in policing protests would greatly reduce violations of peaceful protesters' constitutional rights.

86.     Yet, during the Floyd protests in New York City, the NYPD deployed many police officers who lacked sufficient, or sufficiently recent, training on policing protests.  NYC DOI, *Investigation into NYPD Response to the George Floyd Protests* at 4, 56-63; *see also id.* at 61 (Prior to the Floyd protests, "the NYPD offered no comprehensive in-service training across the Department that related to policing protests at all.").

87.     In failing to adequately train NYPD police officers how to police protests in a manner consistent with the constitutional rights of peaceful protesters, the City and defendants de Blasio, Shea and Monahan acted in deliberate indifference to the constitutional rights of peaceful protesters, including Mr. Allen.

88.     The failure of the City and defendants de Blasio, Shea and Monahan to adequately train NYPD police officers how to police protests in a manner consistent with the constitutional

rights of peaceful protesters led and/or contributed to the injuries that Mr. Allen suffered on May 29, 2020 and continues to suffer, and proximately caused those injuries.

## FIRST CLAIM FOR RELIEF

### False Arrest Claim Under 42 U.S.C. § 1983
### (Against the Defendant Police Officers)

89.     Mr. Allen realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

90.     The defendant police officers, including defendants Rickli and Kunst, acting under color of state law, individually and in concert and within the scope of their authority, stopped, arrested and caused Mr. Allen to be imprisoned without probable cause or reasonable suspicion to believe that Mr. Allen had committed any crime or offense, in violation of Mr. Allen's right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution.

91.     As a result of the foregoing, Mr. Allen suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries.

92.     The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

### Excessive Force Claim Under 42 U.S.C. § 1983
### (Against the Defendant Police Officers )

93.     Mr. Allen realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

94.     The defendant police officers, including defendants Rickli and Kunst, acting under color of state law, individually and in concert and within the scope of their authority, used objectively unreasonable force on Mr. Allen, in violation of Mr. Allen's right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution.

95.     As a result of the foregoing, Mr. Allen suffered bodily injury, emotional distress, and other damages and injuries.

96.     The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRD CLAIM FOR RELIEF

**Free Speech Claim Under 42 U.S.C. § 1983**
**(Against the Defendant Police Officers)**

97.     Mr. Allen realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

98.     The defendant police officers, including defendants Rickli and Kunst, acting under color of state law, individually and in concert and within the scope of their authority, deprived Mr. Allen of the right to freedom of speech under the First Amendment to the United States Constitution by preventing Mr. Allen from continuing to peacefully protest near the Barclays Center on Friday evening, May 29, 2020.

99.     As a result of the foregoing, Mr. Allen suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries, and his speech was chilled.

100.     The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

17

**FOURTH CLAIM FOR RELIEF**

**Free Speech Retaliation Claim Under 42 U.S.C. § 1983**
**(Against the Defendant Police Officers)**

101.    Mr. Allen realleges and incorporates by reference the allegations set forth in the
foregoing paragraphs as if fully set forth herein.

102.    The defendant police officers, including defendants Rickli and Kunst, acting
under color of state law, individually and in concert and within the scope of their authority,
deprived Mr. Allen of the right to freedom of speech under the First Amendment to the United
States Constitution by targeting Mr. Allen for law enforcement action in retaliation for Mr.
Allen's lawful exercise of his right to freedom of speech.

103.    As a result of the foregoing, Mr. Allen suffered deprivation of liberty, bodily
injury, emotional distress, and other damages and injuries, and his speech was chilled.

104.    The unlawful conduct of the defendant police officers was willful, malicious,
oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed
against them.

**FIFTH CLAIM FOR RELIEF**

**Due Process Claim Under 42 U.S.C. § 1983**
**(Against the Defendant Police Officers)**

105.    Mr. Allen realleges and incorporates by reference the allegations set forth in the
foregoing paragraphs as if fully set forth herein.

106.    The defendant police officers, including defendants Rickli and Kunst, acting
under color of state law, individually and in concert and within the scope of their authority,
deprived Mr. Allen of due process of law under the Fourteenth Amendment to the United States

Constitution by failing to give Mr. Allen fair warning that he was violating the law (which Mr. Allen was not).

107.    As a result of the foregoing, Mr. Allen suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries.

108.    The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SIXTH CLAIM FOR RELIEF

**Failure to Intervene Claim Under 42 U.S.C. § 1983**
**(Against the Defendant Police Officers)**

109.    Mr. Allen realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

110.    The defendant police officers, including defendants Rickli and Kunst, each had an affirmative duty to intervene on behalf of Mr. Allen, whose constitutional rights were being violated in that defendant's presence by other police officers, but failed to intervene to prevent the unlawful conduct, despite having a realistic opportunity to do so, in violation of Mr. Allen's right to freedom of speech under the First Amendment to the United States Constitution, right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution and right to due process of law under the Fourteenth Amendment to the United States Constitution.

111.    As a result of the foregoing, Mr. Allen suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries.

19

112.    The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

**SEVENTH CLAIM FOR RELIEF**

**Monell Claim Under 42 U.S.C. § 1983**
**(Against Defendants City, de Blasio, Shea and Monahan)**

113.    Mr. Allen realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

114.    Defendants City, de Blasio, Shea and Monahan have implemented, enforced, encouraged, sanctioned, and/or ratified customs, practices and policies that have led and/or contributed to the violation of the rights of peaceful protesters, including Mr. Allen, to freedom of speech under the First Amendment to the United States Constitution, to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution and to due process of law under the Fourteenth Amendment to the United States Constitution.

115.    These customs, practices and policies include:

(a)    arresting peaceful protesters without probable cause to believe they have committed any crime or offense;

(b)    using excessive force on peaceful protesters; and

(c)    holding arrested protesters in custody well beyond the time needed to process their arrests and often under dangerous and unsafe conditions; and

(d)    placing arrested protesters in excessively tight handcuffs for extended periods of time.

116.     These customs, practices and policies were a moving force behind the violation of Mr. Allen's First, Fourth and Fourteenth Amendment rights on May 29, 2020, and proximately caused Mr. Allen's injuries.

117.     Defendants City, de Blasio, Shea and Monahan acted with deliberate indifference to the likely violation of the First, Fourth and Fourteenth Amendment rights of peaceful protesters, including Mr. Allen, by failing to  adequately train, supervise, and/or discipline NYPD officers to respect those rights.

### Supplemental State Law Claims

118.     Mr. Allen realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

119.     Mr. Allen timely served upon, presented to, and filed with the City a Notice of Claim setting forth all facts and information required under New York General Municipal Law § 50-e.

120.     More than thirty (30) days have elapsed since the presentation of Mr. Allen's claims to the City but the City has wholly neglected or refused to make an adjustment or payment thereof.

121.     This action was commenced within the time allowed to commence actions asserting claims against the City under New York General Municipal Law § 50-i(1)(c), as extended by Governor Cuomo's executive orders issued during the COVID-19 pandemic.  *See* Exec. Ords. 202 (Mar. 7, 2020), 202.67 (Oct. 5, 2020).

122.     Mr. Allen has complied with all conditions precedent to maintaining this action.

## EIGHTH CLAIM FOR RELIEF

**Free Speech Claim Under New York Law**
**(Against All Defendants)**

123.    Mr. Allen realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

124.    The defendant police officers, acting in concert and within the scope of their authority, deprived Mr. Allen of the right to freedom of speech under Article 1, Section 8 of the New York State Constitution by preventing Mr. Allen from continuing to peacefully protest near the Barclays Center on Friday evening, May 29, 2020 and by targeting Mr. Allen for law enforcement action in retaliation for Mr. Allen's lawful exercise of his right to freedom of speech.

125.    As a result of the foregoing, Mr. Allen suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries, and his speech was chilled.

126.    Defendant City is liable to Mr. Allen for the damages that he suffered under the doctrine of *respondeat superior*.

## NINTH CLAIM FOR RELIEF

**False Arrest Claim Under New York Law**
**(Against All Defendants)**

127.    Mr. Allen realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

128.    The defendant police officers, acting in concert and within the scope of their authority, stopped, arrested and caused Mr. Allen to be imprisoned without probable cause or reasonable suspicion to believe that Mr. Allen had committed any crime or offense, and without any warrant or authority to do so.

129.     As a result of the foregoing, Mr. Allen suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries.

130.     Defendant City is liable to Mr. Allen for the damages that he suffered under the doctrine of *respondeat superior*.

## TENTH CLAIM FOR RELIEF

### Assault Claim Under New York Law
### (Against All Defendants)

131.     Mr. Allen realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

132.     The defendant police officers, acting in concert and within the scope of their authority, placed Mr. Allen in apprehension of imminent harmful and offensive bodily contact.

133.     As a result of the foregoing, Mr. Allen suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries.

134.     Defendant City is liable to Mr. Allen for the damages that he suffered under the doctrine of *respondeat superior*.

## ELEVENTH CLAIM FOR RELIEF

### Battery Claim Under New York Law
### (Against All Defendants)

135.     Mr. Allen realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

136.     The defendant police officers, acting in concert and within the scope of their authority, made offensive contact with Mr. Allen without privilege or consent.

137.     As a result of the foregoing, Mr. Allen suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries.

138.    Defendant City is liable to Mr. Allen for the damages that he suffered under the doctrine of *respondeat superior*.

## TWELFTH CLAIM FOR RELIEF

### Negligent Screening, Hiring and Retention Claim Under New York Law
### (Against the City)

139.    Mr. Allen realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

140.    Defendant City failed to use reasonable care in the screening, hiring and retention of the NYPD employees who participated in the above unlawful conduct.

141.    As a result of the foregoing, Mr. Allen suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries.

## THIRTEENTH CLAIM FOR RELIEF

### Negligent Training and Supervision Under New York Law
### (Against the City)

142.    Mr. Allen realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

143.    The City failed to use reasonable care in the training and supervision of the NYPD employees who participated in the above unlawful conduct.

144.    As a result of the foregoing, Mr. Allen suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Allen demands the following relief against the defendants, jointly and severally:

(a)     compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)     punitive damages against the individual defendants;

(c)     injunctive relief declaring that the City's customs, practices and/or policies in effect on May 29, 2020 for policing protests violated Mr. Allen's right to freedom of speech under the First Amendment to the United States Constitution, right to be from unreasonable seizure under the Fourth Amendment to the United States Constitution and right to due process of law under the Fourteenth Amendment to the United States Constitution;

(d)     reasonable attorneys' fees and costs of this litigation; and

(e)     such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
        June 13, 2022

Respectfully submitted,

ROBERT T. PERRY
rtperry32@gmail.com
509 12th Street
Suite 2C
Brooklyn, New York 11215
(347) 415-5272

*Counsel for Plaintiff*

25